UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BETHANY MICHELLE BAYER,

                         Plaintiff,

          v.

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____

DECISION & ORDER

19-CV-0009MWP

**PRELIMINARY STATEMENT**

Plaintiff Bethany Michelle Bayer ("Bayer") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 14).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 9, 12). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

**DISCUSSION**

**I.      Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [her] past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II. Procedural History

Bayer initially applied for DIB and SSI on April 15, 2011. (Tr. 167-68).[1] Those applications were denied by an ALJ on August 27, 2013. (Tr. 172-84). On March 12, 2015, the Appeals Council vacated that decision and remanded the case for further proceedings, directing the ALJ to further consider certain evidence and develop the record as appropriate. (Tr. 10-11, 191-94).[2] On September 22, 2017, the ALJ concluded on remand that Bayer was not disabled. (Tr. 10-31). The Appeals Council denied Bayer's request for review on October 30, 2018. (Tr. 1-6). Bayer commenced this lawsuit on January 2, 2019. (Docket # 1).

## III. The ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that Bayer had not engaged in substantial gainful activity since June 30, 2006, the alleged onset date. (Tr. 13). At step two, the ALJ concluded that Bayer had the severe impairments of "substance abuse disorder in reported

---

[1] The administrative transcript (Docket # 5) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

[2] The Appeals Council reasoned in part that the ALJ's original decision, which afforded "some weight" but not "great weight" to the opinion of consultative examiner Hongbiao Liu, had not "provide[d] [an] adequate rationale for why greater weight was not accorded [to Liu's opinion]," and the Appeals Council directed the ALJ on remand to conduct a "further evaluation of this opinion evidence." (Tr. 182, 192).

4

remission[,] status post facial injury[,] and cervical spine straightening." (Tr. 14). At step three, the ALJ determined that Bayer did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (*Id.*).

The ALJ concluded that Bayer retained the RFC to perform a full range of work at all exertional levels but with certain nonexertional limitations. (Tr. 15). Specifically, the ALJ limited Bayer to unskilled work that is non-complex, does not involve the independent setting of quality, quantity, or method goals or handling multiple simultaneous goals and objectives, does not involve public contact, involves only occasional coworker and supervisory contact, and involves only occasional cervical flexion, extension, and rotation. (*Id.*). At steps four and five, the ALJ found that Bayer had no past relevant work, but that based upon Bayer's age, education, work experience, and RFC, other jobs existed in the national economy that Bayer could perform, such as surveillance system monitor and folding machine operator. (Tr. 21-22). Accordingly, the ALJ found that Bayer was not disabled. (Tr. 22-23).

## IV.   Bayer's Contentions

Bayer contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 9, 13). Specifically, Bayer maintains that the ALJ improperly weighed the medical opinions of her treating oral surgeon, Dr. Steven Vukas ("Vukas"), DMD, MD, and consultative examiner Dr. Hongbiao Liu ("Liu"), MD, the "only two doctors to give an opinion as to [Bayer's] physical capacity," and who "both indicat[ed] a severe limitation in a multitude of areas of functioning," such as in Bayer's ability to sit, walk, and lift. (Docket ## 9-1 at 13-18; 13 at 1-3). In Bayer's view, the ALJ improperly rejected these opinions based upon his own lay reading of the medical

evidence.  (Docket # 9-1 at 13-14).  Moreover, Bayer argues, the ALJ's rejection of these opinions created an evidentiary gap in the record, which resulted in a physical RFC determination unsupported by any medical opinion.  (Docket ## 9-1 at 16-18; 13 at 1-3).[3]

**V.     Analysis**

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."  *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)).  In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).  "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms."  *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010) (summary order).

The record in this case contained two medical opinions assessing Bayer's physical functional limitations.  The first opinion was completed by Bayer's treating oral surgeon, Dr. Vukas, who examined Bayer and completed a "Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination" on February

---

[3] Bayer's contentions relate only to the physical portion of the ALJ's RFC determination, even though the RFC also contains limitations related to Bayer's mental impairments.  Thus, I only address the RFC as it relates to Bayer's physical limitations. *See*, *e.g.*, *Cottrell v. Comm'r of Soc. Sec.*, 2019 WL 201508, *2 n.3 (W.D.N.Y. 2019) ("[claimant's] RFC determination also included several mental limitations; however, the [c]ourt focuses its opinion on [claimant's] physical limitations because she argues only that the ALJ's physical RFC findings lack substantial evidence").

26, 2013. (Tr. 803, 815-16).[4] Vukas indicated that he was a board-certified oral and maxillofacial surgeon and that Bayer had been his patient for seven years. (Tr. 816).

Upon presenting to Vukas, Bayer reported that she could not work because of chronic facial and neck pain, as well as anxiety attacks and memory problems. (Tr. 815). Vukas detailed three of Bayer's medical conditions: first, anxiety and depression, for which Bayer was taking medications and which Vukas expected to be permanent in duration; second, two herniated discs in her neck and head trauma, which caused Bayer to not "remember a lot" and to "forget everything [and not be able to] keep conversations," and which Vukas also expected to be permanent in duration; and third, chronic pain from six titanium facial plates, which Vukas expected would require surgical removal of Bayer's check implants, and which he expected to be permanent in duration. (*Id.*).

Vukas opined that Bayer had functional limitations associated with these medical conditions. With respect to physical functional limitations – presumably caused by Bayer's facial trauma and neck pain, as those were the only physical impairments mentioned – Vukas opined that Bayer was "very limited" in her ability to walk, stand, sit, lift/carry, push, pull, or bend, and climb stairs or perform other climbing, and was "moderately limited" in her ability to use her hands. (Tr. 816).

Consultative examiner Dr. Liu completed the second medical opinion in the record assessing Bayer's physical abilities. (Tr. 841-52). On August 12, 2013, Bayer presented to Liu for an orthopedic examination, complaining of "face, neck, and back injuries and pain since 2006, secondary to trauma, with face reconstruction in 2007 and 2011." (Tr. 841). She

---

[4] Vukas's February 26, 2013 opinion appears several times in the record. (*See* Tr. 800-01, 814-16, 824-25). The versions at Tr. 814-15 and Tr. 824-25 are identical and contain slightly more medical information pertaining to Bayer's facial pain and facial titanium plates than the version at Tr. 800-01. The Court cites to the more complete version of Vukas's opinion, consistent with the approach taken by the ALJ and the parties.

described her pain as constant, pressured and sharp, and at a level of 8-9/10. (*Id.*). Bayer indicated that her neck pain radiated to both shoulders and caused numbness and tingling in her right hand; she indicated that her right side was worse than her left side. (*Id.*). In addition, her low back pain radiated to both legs. (*Id.*). Bayer also stated that she could lift five pounds, walk half a block, and needed to change position every three minutes while sitting or standing, and that cold weather made her pain worse. (*Id.*). With respect to activities of daily living, Bayer indicated that she could cook seven to nine times a week, showered three times a week, and liked to watch television and listen to the radio. (Tr. 842).

Upon examination, Liu noted that Bayer appeared to be in no acute distress. (*Id.*). Bayer demonstrated normal gait, had normal station, used no assistive devices, needed no help changing for the exam or getting on or off the exam table, and was able to rise from a chair without difficulty. (*Id.*). She did exhibit mild difficulty, however, walking on her heels and toes and was limited in her ability to fully squat because of her low back pain. (*Id.*). Bayer was also limited in her cervical spine flexion/extension, rotation to the left and right, and her lateral flexion, but exhibited no cervical or paracervical pain or spasms and no trigger points. (*Id.*). A cervical spine x-ray taken on August 15, 2013 and reviewed by Liu revealed that Bayer had "straightening" in her cervical spine – an impairment that the ALJ recognized as severe at step two of the sequential analysis. (Tr. 14, 843, 845).[5]

Bayer further demonstrated full range of motion in her left shoulder and her elbows, forearms, wrists, and fingers bilaterally, and she did not exhibit joint inflammation, effusion, or instability, and had full strength in her upper extremities. (Tr. 842). Liu noted, however, that Bayer had limited range of motion in her right shoulder, her right upper extremity

---

[5] In addition, an MRI of Bayer's cervical spine completed on October 29, 2008, revealed a "small central subligamentous C5-C6 disc herniation indenting the anterior aspect of the thecal sac." (Tr. 592).

was weaker than her left side, and her right arm had decreased sensation compared to her left arm. (*Id.*). Bayer was also limited in her ability to rotate her lower lumbar spine and straight leg tests were positive bilaterally, but she exhibited no spinal or paraspinal tenderness and had no trigger points. (Tr. 843). Moreover, Bayer had full range of motion in her hips, knees, and ankles, bilaterally, full strength in her lower extremities, and no muscle atrophy, sensory abnormality, joint effusion, inflammation or instability in her lower extremities. (*Id.*).

Liu diagnosed Bayer with anxiety and depression, chronic neck, low back, and facial pain, and hypertension, and opined that Bayer's prognosis was stable. (*Id.*). Liu opined that Bayer had "mild to moderate limitation[s] for prolonged walking, bending, kneeling, and overhead reaching." (*Id.*).

As part of Liu's orthopedic examination, he also completed a more detailed "Medical Source Statement of Ability to do Work-Related Activities (Physical)." (Tr. 846-51). Presumably based on his observations and examination of Bayer, Liu noted that Bayer could occasionally lift or carry up to twenty pounds but could never lift or carry more than that because her right arm was weaker than her left side. (Tr. 846). In Liu's view, Bayer's limited strength in her right arm also prevented her from reaching overhead with that arm, but she could frequently reach in all other directions and handle, finger, feel, and push/pull with her right hand. (Tr. 848). Liu opined that Bayer had no limitations with the use of her left hand. (*Id.*). Liu further noted that, as a result of her limited neck and back range of motion, Bayer could sit for five minutes, stand for ten minutes, and walk for twenty minutes at one time without interruption, and could sit for one hour and stand and walk for two hours total in an eight-hour workday. (Tr. 847). Liu opined that Bayer had no limitations in her ability to use her feet. (Tr. 848).

According to Liu, Bayer's neck and back limitations also restricted certain postural activities. (Tr. 849). Specifically, Liu opined that Bayer could occasionally climb stairs, ladders, or scaffolds, kneel, crouch, and crawl, and could continuously balance and stoop. (*Id.*). Liu also opined that Bayer had certain environmental limitations as a result of her neck and back pain and right arm weakness. (Tr. 850). In relevant part, Liu indicated that Bayer should only occasionally be exposed to unprotected heights and could frequently move mechanical parts and operate a motor vehicle. (*Id.*).

The ALJ reviewed and assigned "little weight" to both Vukas's opinion and Liu's opinion. (Tr. 20-21). With regard to Vukas's opinion, the ALJ stated, among other things, that Vukas completed it on a "check-the-box form" and provided "no explanation . . . for most of the limitations indicated." (Tr. 20). Moreover, the ALJ reasoned, Vukas was Bayer's "treating oral surgeon who did not recommend treatment and his examination was limited to [Bayer's] eyes and facial hardware." (*Id.*). As for Liu's opinion, the ALJ essentially determined that it was "inconsistent with Dr. Liu's own examination and with the other medical evidence of record." (Tr. 21).

As mentioned above, part of Bayer's argument for remand asserts that the ALJ improperly weighed Vukas's and Liu's opinions, an assertion that the Commissioner disputes. (*See* Docket ## 9-1 at 15-16; 12-1 at 10-14). On this record, however, I need not determine this issue because I conclude that even assuming the ALJ correctly discounted the opinion evidence, the ALJ's clear rejection of the functional limitations assessed in those opinions created an evidentiary gap in the record requiring remand. *See Suide v. Astrue*, 371 F. App'x 684, 689-90 (7th Cir. 2010) ("it is not the ALJ's evaluation of [the treating physician's] reports that requires a remand in this case[;] . . . it is the evidentiary deficit left by the ALJ's rejection of his reports –

10

not the decision itself – that is troubling"); *Militello v. Comm'r of Soc. Sec.*, 2019 WL 1409711, *4 (W.D.N.Y. 2019) ("[t]he ALJ had good reasons for rejecting the opinions of plaintiff's treating doctors[;] [b]ut, for an RFC to be supported by substantial evidence, an ALJ's decision must also be grounded in medical support for the functional limitations used in assigning an RFC to plaintiff[;] [u]nfortunately, there is no medical source support in this record for the assigned RFC"); *Stein v. Colvin*, 2016 WL 7334760, *4 (W.D.N.Y. 2016) ("[r]egardless of whether it was proper for the ALJ to discount [the opinion of claimant's treating psychologist], the ALJ's rejection of the only medical opinion in the record created an evidentiary gap in the record requiring remand"); *House v. Astrue*, 2013 WL 422058, *4 (N.D.N.Y. 2013) (ALJ's proper rejection of treating physician opinion nonetheless necessitated remand because absence of any other medical assessment created evidentiary gap).

    As a general matter, although an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013), "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence," *Wilson v. Colvin*, 2015 WL 1003933, *21 (W.D.N.Y. 2015) (alteration and citation omitted). "Accordingly, although the RFC determination is an issue reserved for the Commissioner, '[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities,' as a general rule, the Commissioner 'may not make the connection himself.'" *Nanartowich v. Comm'r of Soc. Sec.*, 2018 WL 2227862, *9 (W.D.N.Y. 2018) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)). Although under certain circumstances, particularly where the medical evidence shows

11

relatively minor physical impairment, "an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment," *House v. Astrue*, 2013 WL 422058 at *4 (internal quotation omitted), I conclude that those circumstances are not present here.

As an initial matter, the ALJ did not just discount the functional limitations assessed by Vukas and Liu; rather, he effectively rejected those limitations in full, as he did not incorporate any of the opined functional restrictions into his RFC determination. Indeed, the ALJ determined that Bayer retained the RFC to perform "a full range of work *at all exertional levels*" with the sole physical limitation being "occasional cervical flexion, extension, and rotation." (Tr. 15 (emphasis supplied)). In other words, the ALJ concluded that Bayer's neck impairment, which the ALJ found to be severe at step two (Tr. 14), resulted only in limited range of motion and did not cause *any* other related functional restrictions.

The ALJ's opinion does not make clear how he determined that Bayer qualified for an RFC so at odds with the restrictive assessments of Vukas and Liu. For example, the ALJ cited to medical records that postdated Liu's examination to suggest that Bayer's physical impairments improved. (Tr. 21 (citing Tr. 1003, 1184-1205)). None of those subsequent records, however, reflect or contain a "useful assessment of [Bayer's] limitations from a medical source" that would support the ALJ's RFC determination. *See Smith v. Comm'r of Soc. Sec.*, 337 F. Supp. 3d 216, 226 (W.D.N.Y. 2018) ("[w]hile in some circumstances, an ALJ may make an RFC finding without [medical] source opinion evidence, the RFC assessment will be sufficient only when the record is 'clear' and contains 'some useful assessment of the claimant's limitations from a medical source'") (citation omitted).

Specifically, on October 6, 2015, Bayer was assessed for her alcohol and drug addiction issues. (Tr. 1003-05). Although Bayer "denie[d] any physical disability" at that time, the assessment dealt exclusively with Bayer's addiction issues and did not examine her physical functionality. Moreover, the other records cited by the ALJ are treatment notes from Acadia Family Health throughout 2016 documenting generally that Bayer presented in no acute distress with no complaints of pain and unremarkable physical findings. (Tr. 1184-1205). Those records contain bare medical findings, however, and provide no functional assessment of Bayer's physical abilities. *See*, *e.g.*, *Militello v. Comm'r of Soc. Sec.*, 2019 WL 1409711 at *3 ("[the court's] review of the record here shows it is remarkable for the absence of medical evidence regarding plaintiff's functional limitations, save for the two reports of [plaintiff's treating physician] which were essentially rejected by the ALJ[;] . . . [t]he treatment notes referencing plaintiff's improvement and noting that he was 'doing well' do not relate plaintiff's impairments to any work-related capacity[;] [n]or do the vague references to 'improving' translate into specific functional limitations set forth in the RFC[;] [i]n other words, the treatment records here do little more than convey symptoms and generalities[;] [t]hey do not form a basis upon which a specific exertional limitation can be formulated").

In addition, it far from clear that the ALJ's only determined physical RFC limitation – occasional cervical flexion, extension, and rotation – adequately accommodates Bayer's physical impairments. Indeed, Bayer's severe cervical spine impairment and her associated complaints of pain are cited often throughout the record and are corroborated by diagnostic imaging. (*See* Tr. 592, 845). Moreover, lumbar spine complaints appear elsewhere besides Liu's examination report (*see*, *e.g.*, Tr. 714 (September 12, 2011 treatment note from Mikhail Strutsovskiy ("Strutsovskiy"), MD, noting that Bayer "demonstrated decreased []

13

functional ROM in cervical spine and lumbar spine approximately 25% in all planes")), and numerous records indicate that Bayer experienced pain in her low back (*see*, *e.g.*, Tr. 626-29 (March 13, 2009 chiropractic examination by Michael Weig ("Weig"), D.C., noting largely normal lumbar range of motion but with pain and positive straight leg tests bilaterally, and diagnosing lumbar sprain/strain injury); Tr. 713-57 (treatment notes from RES Physical Medicine & Rehab Services from September 2011 to November 2012 consistently indicating low back pain on physical examination)). The record also contains numerous references to Bayer's right arm pain/tingling sensations. (*See*, *e.g.*, Tr. 589 (February 4, 2009 treatment note from Sherry Witham-Leitch ("Witham-Leitch"), MD, noting that Bayer's cervical spine pain radiated into her upper extremities, causing weakness and spasms); Tr. 626-29 (March 13, 2009 chiropractic treatment note from Weig noting positive cervical compression test, a positive maximum foraminal compression test and a positive Jackson's test bilaterally); Tr. 588 (May 7, 2009 treatment note from Witham-Leitch noting Bayer's cervical spine pain and spasms and associated weakness in her upper extremities); Tr. 601 (July 30, 2010 treatment note from Mark Grazen ("Grazen"), MD, noting Bayer's complaints of increased tingling sensation in her arms); Tr. 599 (December 17, 2010 treatment note from Grazen noting normal range of motion in cervical spine, but cervical spine and right arm pain); Tr. 714 (September 12, 2011 treatment note from Strutsovskiy noting positive Spurling tests); Tr. 468-72 (Bayer's October 1, 2011 Adult Function Report describing difficulty performing some activities of daily living due to numbing arm pain that radiates down to her fingers; "I can't lift anything over 5 [pounds][;] I pick up my son but that's because he's my life so I do what I have to to take care of him and his needs")).[6]

---

[6] I note that when the ALJ originally decided Bayer's claims in 2013, Liu's opinion was afforded "some weight" but not "great weight." (Tr. 181-82). At the time the Appeals Council remanded the case in 2015, it

In light of the medical evidence detailed above, this is not a record upon which the ALJ could have reached a commonsense RFC determination based on minor physical impairments. Nor is it a record upon which the ALJ could reach an RFC determination without some useful functional assessment of Bayer's limitations. And yet that is precisely what the ALJ appears to have done by rejecting the only two medical opinions in the record. Accordingly, I find that the ALJ's rejection of Vukas's and Liu's opinions – whether those rejections were proper or improper – effectively created an evidentiary gap in the record, and that no other useful functional assessment of Bayer's limitations exists that would support the RFC determination. Remand is thus warranted for further development of the record. *See*, *e.g.*, *Freeman v. Comm'r of Soc. Sec.*, 2019 WL 2016585, *4 (W.D.N.Y. 2019) (RFC not supported by substantial evidence where ALJ gave "little weight" to the only medical opinion of record and failed to account for resting and lifting limitations assessed in the opinion); *Nanartowich v. Comm'r of Soc. Sec. Admin.*, 2018 WL 2227862 at *9 (ALJ's discounting of only medical opinions of record created evidentiary gap in the record; "the ALJ explicitly accorded 'little weight' to the opinions [of the physicians], and nothing suggests that the ALJ accounted for the limitations identified by these physicians in formulating the RFC"); *Stein v. Colvin*, 2016 WL 7334760 at *4 ("[t]he ALJ's rejection of the only medical opinion in the record created an evidentiary gap in the record requiring remand[;] . . . [t]he remainder of the ALJ's decision merely summarizes the medical evidence and [claimant's] testimony and cites to treatment notes that do not address how [claimant's] impairments affect her mental ability to perform work-related functions[;] . . . [i]t is

---

directed the ALJ to explain why he did not assign *greater* weight to Liu's opinion. (Tr. 192). On remand, however, the ALJ apparently determined that Liu's opinion deserved even less weight than before. My decision today does not reach the merits of the ALJ's reasoning in discounting Liu's opinion. I would urge the ALJ, however, in light of the medical evidence detailed above, to reconsider his reasoning in weighing Liu's opinion, particularly regarding whether Liu's opinion is internally inconsistent.

15

unclear to this [c]ourt how the ALJ, who is not a medical professional, determined that [claimant] retained the RFC described above when he discounted the only opinion in the record as to [claimant's] ability to work"); *Wilson v. Colvin*, 2015 WL 1003933 at \*21 ("[a]fter discounting the opinions, the ALJ determined that [plaintiff] retained the physical RFC to perform the full range of light work[;] . . . it is unclear how the ALJ arrived at this RFC or which impairments he considered in formulating his assessment"); *Gross v. Astrue*, 2014 WL 1806779, \*18 (W.D.N.Y. 2014) (RFC not supported by substantial evidence where "[a]fter discounting [the physician's] opinion," the ALJ formulated the RFC "through her own interpretation of various MRIs and x-ray reports contained in the treatment records").

I note that Bayer's claims have now been pending for a substantial period of time; she initially filed her applications for DIB and SSI on April 15, 2011. (Tr. 167-68). To ensure that Bayer's claims are adequately considered, on remand, the ALJ should obtain an updated medical opinion assessing Bayer's functional capabilities, by recontacting Vukas, to the extent that he has relevant information pertaining to Bayer's impairments, or contacting another treating source, or by ordering a new consultative examination of Bayer or obtaining medical expert testimony at any future hearing.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 12)** is **DENIED**, and Bayer's motion for judgment on the pleadings **(Docket # 9)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this

16

case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
June 26, 2020